A95A0892. PIONEER CONCRETE PUMPING SERVICE, INC.
v. T & B SCOTTDALE CONTRACTORS, INC.
(462 SE2d 627)

BEASLEY, Chief Judge.

Pioneer provided concrete pumping services to T & B on a construction project. On August 30, 1991, while Pioneer was performing this service, one of the braces supporting its truck gave way and a T & B employee was killed. After the pumping was completed, Pioneer presented a form "job ticket" to Lovett, T & B's site supervisor who signed it. The front of the form showed the amount of time spent and quantities supplied by Pioneer that day and had a signature line that read: "The above Times and Quantities are Verified to be Correct: BY _____."

On the reverse of the form were "TERMS AND CONDITIONS" which related to such matters as Responsibilities of Lessee; Delays, Stoppages and Backcharges; Notice and Waiver; and Terms of Payment. Included is a provision stating T & B would indemnify Pioneer for any claim "resulting from the performance of this agreement," unless the claim was the result of Pioneer's "sole negligence." This provision in effect shifted risk to the general contractor. There was no reference on the front to these terms and conditions on the back. Identical job tickets had been used with previous Pioneer deliveries on this project, signed by Lovett and others, and paid by T & B without protest concerning the terms on the reverse.

As a result of the application of OCGA § 34-9-11, the employee's family made a demand upon Pioneer, which entered negotiations and eventually settled for $700,000. Although Pioneer notified T & B of the negotiations, T & B did not participate. Pioneer claimed a right to indemnification based on the provision on the back of the job ticket, but T & B denied the claim and Pioneer sued. Both parties moved for summary judgment. Pioneer appeals from the court's grant of T & B's motion and the denial of its own.

1. The court erred in ruling that as a matter of law the job ticket was insufficient to bind a signer to the terms and conditions appearing on the reverse. "[O]ne signing a document has a duty to read it and is bound by the terms of a document he does not read." *Trulove v. Woodmen of the World Life Ins. Soc.*, 204 Ga. App. 362, 365 (1) (419 SE2d 324) (1992). The fact that the terms and conditions were printed on the reverse of the document does not render them unenforceable as a matter of law, nor does Lovett's testimony that he never read the back. See *Brown v. Five Points Parking Ctr.*, 121 Ga.

App. 819 (175 SE2d 901) (1970). T & B's position, carried to its logical end, is that what was on the back of the ticket was meaningless or superfluous, the same as though it had been blank.

Citing *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391 (297 SE2d 733) (1982), T & B argues that there was no enforceable contract because there was no meeting of the minds. However, "[a]s recognized in *Cox*, it is rudimentary contract law that in some instances the only conduct of the parties manifesting their intent is the express language of the agreement, whereas in other instances the language is ambiguous, in which case the courts are free to consider extrinsic evidence of the parties' intentions. *Cox* was a case of the latter variety." *Trulove*, supra at 365-366 (3). This, like *Trulove*, is a case of the former kind.

Lovett's signature on the document, if otherwise effective to bind T & B, bound it to the indemnification provision. OCGA § 13-2-1.

2. T & B next claims Lovett's signature on the document was not binding upon it. It does not contest he was its agent, only that he did not have authority to sign an agreement that the company would indemnify Pioneer. Lovett not only signed the document in this instance but had previously signed other Pioneer documents with identical provisions.

Although there is evidence sufficient to show T & B held Lovett out as having authority to sign the document, see *Howard v. St. Paul Fire &c. Ins. Co.*, 180 Ga. App. 802, 804 (1) (350 SE2d 776) (1986), whether it is conclusive fact need not be reached; the evidence shows T & B ratified Lovett's signature. OCGA §§ 10-6-51; 10-6-52. " ' "To bind the principal, there is no necessity for a positive or direct confirmation on his part, of the act of the agent, but it may arise by implication, from the acts or proceedings of the principal in pais. [Cits.] . . . Slight circumstances and small matters will sometimes suffice to raise the presumption of ratification." [Cits.] A ratification by the principal refers back to the act ratified, and becomes effective as if originally authorized; and a ratification once made can not be revoked.' [Cit.]" *Lipsey Motors v. Karp Motors*, 194 Ga. App. 15, 17 (1) (389 SE2d 537) (1989). Ratifying conduct can include silence, id., or payment pursuant to an allegedly unauthorized agreement. *Holliday Constr. Co. v. Sandy Springs Assoc.*, 198 Ga. App. 20, 21 (2) (400 SE2d 380) (1990).

Bettis, T & B's project manager, contacted Lovett the week after the accident and expressed concern that Lovett's signature might expose T & B to liability. Bettis then sent Pioneer a letter stating T & B would withhold certain funds reflecting costs calculated to be attributable to the accident. The letter did not claim Lovett was not authorized to sign the job ticket, nor did it state T & B did not consider itself bound by the indemnity provision. Rather, its general

tenor suggests T & B took the position the accident was due solely to Pioneer's negligence, in which the indemnity provision would not apply. T & B paid a portion of the sums reflected on the August 30, 1991 job ticket, ratifying Lovett's signing of the ticket.

T & B argues that this letter shows it had some dispute about Pioneer's services on August 30, 1991; it therefore made only a partial payment, and such behavior does not show a complete ratification. It also argues that any ratification applied only to the "time and quantity" statements on the front of the form, not the terms and conditions on the reverse. Either T & B ratified Lovett's signature or it did not. The law provides that "[t]he principal shall be bound by all the acts of his agent within the scope of his authority; if the agent shall exceed his authority, the principal may not ratify in part and repudiate in part; he shall adopt either the whole or none." OCGA § 10-6-51; see *Vickery Ins. Agency v. Chambers*, 215 Ga. App. 48, 50-51 (449 SE2d 885) (1994). It was error to rule as a matter of law that T & B had not ratified Lovett's signature.

As T & B points to no evidence it repudiated Lovett's signature, other than its letter claiming an offset on the amount owed Pioneer for the services rendered on August 30, which dispute does not affect the indemnity provision, there is no issue of material fact remaining. Summary judgment on this issue should have been granted to Pioneer, not T & B.

3. Pioneer does not argue that the fatal accident was caused by other than its "sole negligence," and it appears that factual matter remains contested. The court did not err in denying Pioneer's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 11, 1995 —
RECONSIDERATION DENIED SEPTEMBER 27, 1995 —

*Goodman, McGuffey, Aust & Lindsey, William S. Goodman, Kimberly C. Raley*, for appellant.

*Sullivan, Hall, Booth & Smith, John E. Hall, Jr., Jeffrey T. Wise*, for appellee.